# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ZHANG JIAN LONG, <br><br> Defendant. | Case No. CR06-0103 <br><br> REPORT AND RECOMMENDATION |

This matter comes before the court pursuant to the defendant's September 1, 2006, motion to suppress evidence (docket number 9). Originally, it appeared that the motion claimed only that the defendant's statements were the product of an unreasonable search and seizure. In briefs filed October 26, 2006, and November 1, 2006, it became clear that the defendant contends that he did not validly waive the Miranda warnings given to him on July 6, 2006.

The court held an evidentiary hearing on this motion on November 13, 2006, at which the defendant was present and represented by Ta-Yu-Yang. The government was represented by Assistant United States Attorney Ian Thornhill. It is recommended that the defendant's motion be denied. The court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On July 5, 2006, agents of the Bureau of Immigration and Customs Enforcement (BICE) executed a federal search warrant to search vehicles used by the defendant to sell allegedly counterfeit tennis shoes, hats, sun glasses, and other items. Upon defendant Jian Long Zhang's arrest, he was asked in English for some information, such as his address

1

and his immigration status. When it became apparent that he had difficulty conversing in English, he told Special Agent Chris Cantrell of the Bureau of Immigration and Customs Enforcement (BICE) that he spoke Mandarin.

On July 6, 2006, the defendant and his codefendant, Donyan Huang, were interrogated at the BICE office in Cedar Rapids. Agent Cantrell had arranged to use an interpreter over the telephone to assist in the interrogation.

Shortly after 10:00 a.m. on July 6, Cantrell called Kitty Chi, an employee of the Department of Homeland Security working in New York as an interpreter. Ms. Chi has worked for Homeland Security since 1999. Prior to that she worked for approximately three other language translating services. Ms. Chi was born in Hong Kong and speaks fluent Cantonese. Her parents were from Foochow and speak only Foochowese at home. Accordingly, Ms. Chi is fluent in Foochowese as well. Finally, Ms. Chi studied and spoke Mandarin throughout her eleven years of secondary education. It is common in China for people to speak both the dialect of their city or region and Mandarin as Mandarin is the official dialect of China taught in schools. Ms. Chi serves as an interpreter on approximately ten to twenty occasions every day. She is not a certified interpreter.

Ms. Chi and the other interpreters in her office have a standard practice when commencing Chinese interpreter services. The practice is to ask the non-English speaking person what dialect they prefer to use. They are asked this question using the Mandarin dialect, presumably because it is the official dialect of China. Because of her experience, Ms. Chi is quickly able to determine whether she or the other Chinese speaking participant on the telephone has difficulty understanding each other. If there is any difficulty with their ability to understand each other, she informs the agent conducting the interview and then asks the person being interrogated whether they would prefer a different dialect. If at any point in the interrogation, a request is made for a different dialect such as Wenzhouhua, the call is simply transferred to another interpreter in the office. The office

at which Ms. Chi works has a Wenzhouhua interpreter readily available.  Ms. Chi does not have an independent recollection of the July 6, 2006, translation.  Because of this, she is confident that it transpired without difficulty.

At the beginning of the interrogation, Agent Cantrell gave the defendant <u>Miranda</u> warnings.  He used a standard Drug Enforcement Administration (DEA) <u>Miranda</u> warning waiver form.  However, he deviated from the form to indicate that statements made by the defendant could be used both in court and in immigration proceedings.  Upon completion of the <u>Miranda</u> warning, Agent Cantrell asked if the defendant was willing to speak with him without an attorney being present.  The defendant said that he was willing to do so.  Nothing about the process suggested that the defendant was having any difficulty with the translation process.

The interrogation lasted approximately 45 minutes.  Cantrell made no threats or promises to the defendant but simply asked questions concerning where the defendant had obtained the goods that he was selling, the price of those goods, how long he had been in business, and other questions related to the sale of counterfeit trademark items.  To the limited extent to which the defendant was again asked questions concerning his address and immigration status, his answers were consistent on July 6, 2006, with the answers given in English on July 5, 2006.  When it came to the ultimate issue as to whether the defendant knew that the items he was selling were counterfeit, the defendant gave inconsistent answers about knowing that they were "fake" and not knowing this information.

The defendant in his motion states that his native language is Wenzhouhua.  He alleges that the history of this language goes back to about 2000 B.C. and that it is a notoriously eccentric dialect.  The motion states that he has a fifth grade education and that since his arrival in the United States, he speaks Wenzhouhua with friends, relatives, and fellow countrymen.  Again, in his motion, he contends that the last time he studied Mandarin was over 25 years ago.

3

The defendant has a right to avoid self-incrimination. That right has been and will be scrupulously honored in this court. However, it is important to note that because the defendant presented no evidence except through cross-examination, there is absolutely no evidence in the record that the defendant's preferred dialect is Wenzhouhua. His lawyer has simply asked for a Wenzhouhua interpreter in these proceedings. Similarly, there is no evidence other than that presented by the interpreter as to the defendant's understanding of Mandarin or any alleged difficulties he had understanding the interpreter used by Agent Cantrell.

The facts of this case simply demonstrate an unremarkable translation by a highly qualified interpreter. This interpreter converses daily with people using the Mandarin dialect. She knows when she has difficulty communicating with others in this dialect and has the ready ability to change to two other Chinese dialects or transfer the case to an interpreter who speaks yet another dialect. The fact that the interpreter does not remember this particular call is, in fact, strong evidence that the conversation was effectively translated as part of the interpreter's routine habit. The answers provided by the defendant as recorded in Agent Cantrell's investigative report also show that the defendant understood and responsively answered Cantrell's questions. Although there is no evidence in the record concerning the defendant's subjective understanding, the objective evidence in the record clearly demonstrate a knowing and voluntary waiver of his <u>Miranda</u> rights.

## **CONCLUSIONS OF LAW**

The government bears the burden of proving by a preponderance of the evidence that the defendant knowingly, voluntarily, and intelligently waived his rights. <u>United States v. Black Bear</u>, 422 F.3d 658 (8th Cir. 2005); <u>United States v. Barahona</u>, 990 F.2d 412, 418 (8th Cir. 1993). If the government can establish that the suspect "knowingly, and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel," his statements elicited during questioning are admissible. <u>Grubbs v.</u>

4

Delo, 948 F.2d 1459, 1466 (8th Cir. 1991) (citing Miranda v. Arizona, 384 U.S. 436, 475 (1966)). However,

> [w]hether a defendant waives his constitutional rights has two distinct inquiries. "First, the relinquishment of the rights must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986). "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id.

United States v. Caldwell, 954 F.2d 496, 504 (8th Cir. 1992). Whether the defendant has waived his rights is examined in the totality of the circumstances and the entire course of police conduct, id. at 505 (citing Oregon v. Elstad, 470 U.S. 298, 318 (1985)), including the background, experience, and conduct of the accused. Barahona, 990 F.2d at 418. The defendant must be capable of understanding the warnings provided him and the consequences of his decision to waive his rights. Caldwell, 954 F.2d at 505 (citing Moran v. Burbine, 475 U.S. 412, 422 (1986)). A defendant has made a valid waiver of his rights where the defendant responded to questioning without invoking his rights to counsel or to remain silent, and no evidence of police coercion existed. Id. at 504. "[C]oercion can be mental as well as physical, and . . . the blood of the accused is not the only hallmark of an unconstitutional inquisition." Arizona v. Fulminante, 499 U.S. 279 (1991) (quoting Blackburn v. Alabama, 361 U.S. 199, 206 (1960)).

This motion is completely fact-driven. The situation involving the use of interpreters for Miranda warnings and waivers is common. See, e.g., United States v. Lin, 131 Fed. Appx. 884 (3d Cir. 2005). However, the cases do not assist in determining whether this defendant understood and waived his rights pursuant to Miranda. Given the evidence in this record, it is clear that the government established by a preponderance of the evidence that the defendant understood and waived those rights prior to speaking with Agent Cantrell.

5

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[1] to the Report and Recommendation within ten (10) days of the date of the report and recommendation, that the September 1, 2006, motion to suppress evidence be denied.

December 6, 2006.

                                              JOHN A. JARVEY
                                              Magistrate Judge
                                              UNITED STATES DISTRICT COURT

---

[1] Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.